# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

JENNIFER ADRIANA MENDOZA,

        Plaintiff,

    v.

ANDREW SAUL,
Commissioner of Social Security,[1]

        Defendant.

_____/

Case No. 1:18-cv-00925-SKO

ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT

(Doc. 1)

## I.     INTRODUCTION

Plaintiff Jennifer Adriana Mendoza ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for Child's Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. § 402(d), and for Supplemental Security Income (SSI) under Title XVI of the Social Security Act

---

[1] On June 17, 2019, Andrew Saul became the Commissioner of the Social Security Administration. *See* https://www.ssa.gov/agency/commissioner.html (last visited by the court on August 26, 2019).  He is therefore substituted as the defendant in this action. *See* 42 U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in his official capacity, be the proper defendant").

1 (the "Act"), 42 U.S.C. §§ 1381–1383f.[2] (Doc. 1.) The matter is currently before the Court on the

2 parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto,

3 United States Magistrate Judge.[3]

## II. BACKGROUND

5    On June 11, 2013, Plaintiff applied for child's insurance benefits and for SSI, alleging

6 disability due to chronic depression, generalized anxiety disorder, bipolar disorder, and personality

7 disorder. (Administrative Record ("AR") 71–72, 77–78, 85–86, 94–95, 176–77, 182–83, 195.)

8 The disability onset date for both applications was alleged to be April 1, 2003. (AR 71–72, 77–78,

9 85–86, 94–95, 176–77, 182–83, 195.)

10    Plaintiff was born in April 15, 1985, and was 17 years old on the alleged disability onset

11 date, making her a "younger person" under the regulations. (AR 25, 43, 71–72, 77–78, 85–86, 94–

12 95); *see* 20 C.F.R §§ 404.1563(c), 416.963(c) (same). Plaintiff has a ninth-grade education and

13 can communicate in English. (AR 23, 43–44, 194–96.)

14 **A.    Relevant Medical Evidence[4]**

15    **1.    Community Regional Medical Center**

16    In December 2011, Plaintiff presented with chest pain and nausea and was hospitalized for

17 four days. (AR 337, 339, 354.) A history of depression, bipolar disorder, and anxiety was noted.

18 (AR 337.) Upon physical examination, Plaintiff had normal mood and affect. (AR 338, 344.) She

19 was assessed with generalized anxiety. (AR 345.) She reported feeling "disgusting" since her

20 mother passed away in November and was in the process of divorcing her husband. (AR 350–52.)

21    Plaintiff previously used methamphetamine and marijuana but quit "a long time ago." (AR

22

---

23 [2] Disabled child's insurance benefits are paid to the qualified "child . . . of an individual entitled to old-age or disability
insurance benefits, or of an individual who dies a fully or currently insured individual," if the child is 18 years of age,

24 or older, and has a disability that began before she turned 22 years old. 42 U.S.C. § 402(d)(1)(B)(ii); 20 C.F.R. §
404.350(a)(5); *Moore v. Comm'r of Social Sec. Admin.*, 278 F.3d 920, 925 (9th Cir. 2002). SSI is paid to financially

25 needy disabled persons. 42 U.S.C. § 1382(a); *Washington State Dept. of Social and Health Services v. Guardianship
Estate of Keffeler*, 537 U.S. 371, 375 (2003) ("Title XVI of the Act, § 1381 *et seq.*, is the Supplemental Security Income

26 (SSI) scheme of benefits for aged, blind, or disabled individuals, including children, whose income and assets fall
below specified levels . . . .").

27 [3] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (Docs. 6, 8.)

[4] As Plaintiff's assertions of error are limited to the ALJ's alleged improper formulation of Plaintiff's mental RFC and

28 reliance on the Medical-Vocational Guidelines, 20 CFR, Part 404, Subpart P, Appendix 2 ("Grids"), only evidence
relevant to those arguments is set forth in this Order.

350.)  She was observed appearing depressed with flat affect.  (AR 352.)  Plaintiff had good insight and judgment and denied suicidal ideation, homicidal ideation, auditory hallucinations, and delusional thoughts.  (AR 350, 352.)  She was found to "meet[] the criteria for Major Depression" and was continued on medication.  (AR 352.)  Plaintiff was also prescribed medication for her anxiety.  (AR 352.)

### 2.  Fresno County Department of Behavioral Health

Plaintiff was diagnosed with anxiety, bipolar disorder, and depression in April 2012, while two months pregnant.  (AR 241.)  In September 2012, while seven months pregnant, Plaintiff reported feeling depressed and "doesn't feel like doing anything."  (AR 244, 253.)  She stated she was diagnosed with bipolar disorder as a teenager and had been taking medication.  (AR 244, 253.)

Licensed Clinical Social Worker (LCSW) Scheree Lau performed a comprehensive assessment of Plaintiff in September 2012 and noted she had impaired memory, poor insight and judgment, and exhibited impulsive, violent, and assaultive behavior.  (AR 265–72.)  According to LCSW Lau, Plaintiff's prognosis was "guarded."  (AR 271.)  Plaintiff reported using cocaine, PCP, and methamphetamines in the past, and LCSW Lau noted that Plaintiff uses drugs to self-medicate.  (AR 267–68.)  Plaintiff reported using marijuana the night before.  (AR 272.)  She reported insomnia, decreased appetite, temper outbursts, and feelings of lack of control, anger, and grief due to her mother's death.  (AR 272.)  LCSW Lau diagnosed Plaintiff with "Bipolar I, MRE, mixed, recurrent," "Cannabis Abuse," and "Bereavement."  (AR 272.)

In February 2013, Plaintiff reported that she had not taken medication since the birth of her daughter in November.  (AR 259.)  She presented with a calm mood, organized thought process, and thought content devoid of psychotic or delusional function.  (AR 259.)  Plaintiff "emphatically denied" all suicidal and homicidal ideation.  (AR 259.)  She expressed a desire to get back on her medication due to her depression and anger. (AR 259.)  Plaintiff reported that "if anyone looks sideways at her she will spontaneously pick a fight with them."  (AR 259.)

Nurse Practitioner (NP) Elisa Salazar conducted a psychiatric evaluation of Plaintiff in May 2013.  (AR 250–52, 400–02.)  Plaintiff appeared well-groomed and engaged/responded appropriately with her six-month-old daughter.  (AR 251, 401.)  Her motor activity, cognition,

3

speech, affective range, and orientation were all normal, with organized and linear thought processes. (AR 251–52, 401–402.) Plaintiff endorsed auditory hallucinations and passive suicidal ideation but denied intent. (AR 252, 402.) Her mood was listed as depressed and irritable and her insight was fair. (AR 252, 402.) NP Salazar diagnosed bipolar disorder, post-traumatic stress disorder (PTSD) (rule-out), and polysubstance dependence. (AR 252, 402.) She prescribed Abilify for "mood stabilization." (AR 252, 402.)

In July 2013, Plaintiff reported to NP Salazar that she got into a fight with her aunt that resulted in the police and child protective services being called. (AR 246, 396.) She stated that she felt "more calm" on Abilify but was tired. (AR 246, 396.) Plaintiff denied suicidal or homicidal ideation but reported that she experiences auditory hallucinations when she is alone. (AR 246, 396.) Plaintiff's mood was "angry" but her behavior cooperative, and her motor activity, sensorium, speech, orientation, affective range, and thought processes were all normal. (AR 246, 396.) NP Salazar noted Plaintiff displayed "borderline traits: fear of abandonment, intense relationships, mood instability, [and] difficulty controlling anger." (AR 247, 397.) NP Salazar assessed Plaintiff with borderline personality disorder and referred her to individual therapy. (AR 247, 397.)

Plaintiff presented for a follow-up visit with NP Salazar in October 2013. (AR 393–94.) She reported having stopped taking Abilify because she was tired. (AR 393.) According to Plaintiff, she "[h]ears voices calling her name, sounded like her mom." (AR 393.) She reported getting irritated and agitated easily, getting into "fights with random people," and superficial cutting of her arm to "take[] the inside pain away." (AR 393.) Upon examination, NP Salazar found Plaintiff cooperative, with alert sensorium, organized thought processes, and normal motor activity, cognition, speech, orientation, and affective range. (AR 393.) Plaintiff denied suicidal and homicidal ideation. (AR 393.) Her mood was listed as irritable and "angry." (AR 393.) NP Salazar noted Plaintiff had poor to fair insight, had not followed up with treatment in the past, and was not honest about substance abuse. (AR 393.) Borderline personality disorder was once against assessed. (AR 394.) NP Salazar recommended that Plaintiff discontinue Abilify and try Lamictal (Lamotrigine) instead. (AR 394.)

At a follow up appointment in December 2013, Plaintiff reported continued irritability and anger, but she had stopped cutting. (AR 390.) She had also run out of Lamictal. (AR 390.) Upon examination, NP Salazar found Plaintiff cooperative, with alert sensorium, organized thought processes, and normal motor activity, cognition, speech, orientation, and affective range. (AR 390.) Plaintiff experienced hallucinations and passive suicidal ideation. (AR 390.) She denied homicidal ideation. (AR 390.) Her mood was listed as depressed and irritable. (AR 390.) NP Salazar noted Plaintiff had poor to fair insight, had not followed up with treatment in the past, and was not honest about substance abuse. (AR 390.) Borderline personality disorder was once against assessed. (AR 391.) NP Salazar recommended Plaintiff re-start Lamictal. (AR 391.)

Plaintiff failed to show for follow up appointments in February and March 2014. (AR 388–89.) In August 2014, Plaintiff was seen via telemedicine by John F. Balog, M.D. (AR 412–17, .) She reported feeling better on Lamictal. (AR 416.) Plaintiff reported living in a "place for women" that is "not safe" and where there is "fighting constantly." (AR 412, 414, 416.) According to Plaintiff, her anxiety is overwhelming due to her living situation. (AR 416.) Dr. Balog noted Plaintiff's motor activity, cognition, speech, orientation, sensorium, affective range, and thought processes were all normal. (AR 412, 414, 416.) Her mood was listed as depressed and irritable. (AR 412, 414, 416.) Dr. Balog noted Plaintiff had poor to fair insight, had not followed up with treatment in the past, and was not honest about substance abuse. (AR 412, 414, 416.) Bipolar disorder, PTSD (rule-out), and borderline personality disorder were once against assessed. (AR 413, 415, 417.)

Plaintiff reported being "not good" in September 2014. (AR 410.) Her children were removed from her custody due to marijuana use and child endangerment. (AR 410.) Plaintiff reported that she is trying to get her children back. (AR 410.) Dr. Balog's examination findings remained the same as the previous month. (AR 410–11.) He advised Plaintiff to continue Lamictal and prescribed Geodon and Trazodone. (AR 411.) Dr. Balog also recommended that Plaintiff undergo behavioral therapy. (AR 411.)

In December 2015, Plaintiff presented via telemedicine for a follow-up appointment with Dr. Balog. (AR 408–09.) She reported that she didn't continue treatment and "things got out of

hand." (AR 408.) Plaintiff was "on the streets for a while" but had been in an apartment for five months and living with her boyfriend. (AR 408.) She stated being out of medication and not having taken it for over a year. Plaintiff had a baby five months earlier and all of her children were living with their grandmother. (AR 408.) She reported having completed a four-and-a-half-month in-patient treatment. (AR 408.) Upon examination, Dr. Balog noted she was well-groomed and cooperative, with normal motor activity, sensorium, cognition, speech, orientation, and affective range. (AR 408.) Plaintiff's thought processes were linear and goal-oriented. (AR 408.) She denied suicidal and homicidal ideation but endorsed auditory and visual hallucinations. (AR 408.) Plaintiff's mood was noted to be depressed and irritable, and Dr. Balog noted impaired insight and judgment due to her history of non-compliance. (AR 408.) He prescribed Buproprion, Perphenazine, and Trazodone. (AR 409.)

### 3. State Agency Physicians

On February 20, 2014, Winston Brown, M.D., a Disability Determinations Service medical consultant, reviewed Plaintiff's medical records and found them insufficient to make a determination regarding her mental residual functional capacity (RFC).[5] (AR 74–76, 80–82.) Dr. Brown indicated that a consultative examination was required (AR 74, 80.) A consultative examination was scheduled for May 24, 2014, but Plaintiff failed to show up. (AR 405–06.)

Upon reconsideration on July 14, 2014, another Disability Determinations Service medical consultant, R. Torigoe, Ph.D., affirmed Dr. Brown's determination of insufficient evidence. (AR 91–92, 100–02.)

## B. Administrative Proceedings

The Commissioner denied Plaintiff's applications for benefits initially on February 26, 2014, and again on reconsideration on August 5, 2014. (AR 18, 107–12, 116–26.) Consequently,

---

[5] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. TITLES II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8P (S.S.A. July 2, 1996). The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id.* "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (AR 127–35.)

On September 16, 2016, Plaintiff appeared with counsel and testified before an ALJ as to her alleged disabling conditions.  (AR 43–69.)  Plaintiff testified that her mood varies between neutral, not mad, and angry.  (AR 64.)  She also testified she is depressed "[p]retty much daily."  (AR 64.)

## C.     The ALJ's Decision

In a decision dated February 1, 2017, the ALJ found that Plaintiff was not disabled.  (AR 18–26.)  The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 404.1520(a)(4) and § 416.920(a)(4).  (AR 20–26.)  The ALJ first determined that Plaintiff had not attained age 22 as of April 1, 2003, the alleged onset date.  (AR 20.)  The ALJ next decided that Plaintiff had not engaged in substantial gainful activity since April 1, 2003, the alleged onset date (step one).  (AR 20.)  At step two, the ALJ found Plaintiff's following combination of impairments to be severe: depression versus major depression; anxiety versus generalized anxiety disorder; a history of polysubstance abuse, in remission; posttraumatic stress disorder; psoriasis; asthma; gastroesophageal reflux disease; marijuana abuse, in remission; hepatitis; bradycardia; a history of amphetamine dependence; a personality disorder; bipolar disorder; and borderline personality disorder.  (AR 20.)  Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three).  (AR 21–22.)

The ALJ then assessed Plaintiff's RFC and applied the RFC assessment at steps four and five.  *See* 20 C.F.R. § 404.1520(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity . . . .  We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."); *see id*. § 416.920(a)(4) (same).  The ALJ determined that Plaintiff had the RFC:

> to perform a wide range of work at the medium exertional level as defined in 20 C.F.R. [§§] 404.1567(c) and 416.967(c).  Specifically, she can lift and carry 50 pounds occasionally and 25 pounds frequently, stand and walk six hours, and sit six hours in an eight-hour workday with normal breaks.  She can frequently balance, stoop, kneel, crouch, crawl, and climb ramps or stairs, but can only occasionally climb ladders, ropes, or scaffolds.  [Plaintiff] also needs to avoid

concentrated exposure to hazards and pulmonary irritants. She can understand, remember, and apply information necessary to perform routine repetitive work tasks and is capable of maintaining concentration, attention, persistence, and pace for routine, repetitive work tasks. [Plaintiff] can have no more than occasional face-to-face interaction with the general public, supervisors, and coworkers with occasional defined as one-third of the workday with each group. In addition, she is capable of adapting to routine repetitive work tasks and she can manage herself in an employment setting for routine repetitive work.

(AR 22.) Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms[,]" he rejected Plaintiff's subjective testimony as "not entirely consistent with the medical evidence and other evidence in the record . . . ." (AR 25.)

The ALJ determined Plaintiff had no past relevant work (step four), but that, considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that she can perform (step five). (AR 25–26.)

Plaintiff sought review of this decision before the Appeals Council, which denied review on May 4, 2018. (AR 1–6.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.981, 416.1481.

## III. LEGAL STANDARD

**A. Applicable Law**

An individual is considered "disabled" for purposes of disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). However, "[a]n individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520); *see also* 20 C.F.R. § 416.920. The Ninth Circuit has provided the following description of the sequential evaluation analysis:

In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing her past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *see, e.g.*, 20 C.F.R. § 416.920(a)(4) (providing the "five-step sequential evaluation process" for SSI claimants). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520); 20 C.F.R. § 416.920.

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue her past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.    Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citing *Tackett*, 180 F.3d at 1098). "Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). "The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted). Additionally, "[t]he court will uphold the ALJ's conclusion when the

evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund*, 253 F.3d at 1156 ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." (citations omitted)).

Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti*, 533 F.3d at 1038 (quoting *Robbins*, 466 F.3d at 885). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating

a specific quantum of supporting evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

## IV.        DISCUSSION

### A.        The ALJ's Assessment of Plaintiff's RFC

Plaintiff contends that there is no substantial evidence to support the ALJ's RFC assessment of Plaintiff's mental limitations. (Doc. 14 at 13–17.) She points out that "no treating or examining source provided an opinion regarding [Plaintiff]'s mental [RFC]" and that the "State Agency non-examining medical consultants found there was insufficient evidence to make a determination regarding [Plaintiff]'s mental [RFC]." (*Id.* at 14.) Plaintiff submits that the ALJ could have "made inquiries at the administrative hearing why [Plaintiff] failed to attend the ordered consultative examination," and/or could have "continued the administrative hearing to allow an opportunity for a consultative examination" or "to allow non-examining State Agency medical consultants an opportunity to review the evidence subsequent to" their review. (*Id.* at 15.) Instead, according to Plaintiff, the ALJ relied on his lay opinion to "fill this gap in proof" and "erred in failing to develop the record further." (*Id. See also* Doc. 18 at 4–5.) Plaintiff contends that because the ALJ further failed to address and/or reconcile conflicting medical records, substantial evidence does not support the ALJ's mental RFC determination and the matter should be remanded for further administrative proceedings. (*Id.* at 16–17; Doc. 18 at 3.)

Defendant responds that the ALJ fulfilled his obligation to develop the record by leaving the record open after the hearing for Plaintiff to submit additional records. (Doc. 17 at 12.) Defendant also relies on the fact that Plaintiff's subjective complaints were found to be less than credible—a finding that Plaintiff does not challenge. (*Id.* at 13–18.) Defendant maintains that the ALJ's mental RFC assessment was therefore based on substantial evidence supported from interferences reasonably drawn from the record and should be affirmed. (*Id.* at 18.)

### 1.        Legal Standard

As stated above, the ALJ determines a claimant's RFC before step four of the sequential evaluation analysis. *See, e.g.*, 20 C.F.R. §§ 404.1520(e), 416.920(e). A claimant's RFC "is the

most [the claimant] can still do despite [their] limitations." *Id.* §§ 404.1545(a)(1), 416.945(a)(1).

"In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record . . . ."

*Robbins*, 466 F.3d at 883. "The ALJ is entitled to formulate an RFC and resolve any ambiguity or inconsistency in the medical evidence . . . ." *Jenkins v. Colvin*, Case No. 1:15-cv-01135-SKO, 2016 WL 4126707, at *6 (E.D. Cal. Aug. 2, 2016) (citing *Lewis v. Apfel*, 236 F.3d 503, 509 (9th Cir. 2001)). Additionally, "[t]he ALJ can . . . decide what weight to give to what evidence as long as the ALJ's reasoning is free of legal error and is based on substantial evidence." *Tremayne v. Astrue*, No. CIV 08–2795 EFB, 2010 WL 1266850, at *12 (E.D. Cal. Mar. 29, 2010) (citing *Reddick v. Chater*, 157 F.3d 715 (9th Cir. 1998)).

### 2. Analysis

The ALJ found that Plaintiff "can understand, remember, and apply information necessary to perform routine repetitive work tasks and is capable of maintaining concentration, attention, persistence, and pace for routine, repetitive work tasks," "can have no more than occasional face-to-face interaction with the general public, supervisors, and coworkers with occasional defined as one-third of the workday with each group," and "is capable of adapting to routine repetitive work tasks and she can manage herself in an employment setting for routine repetitive work." (AR 22.) Plaintiff contends this portion of the assessed RFC is unsupported by substantial evidence because "[n]o medical opinion evidence supports the mental RFC the ALJ found to exist." (Doc. 14 at 14.) Plaintiff suggests that the RFC must generally be supported by a medical opinion from an acceptable medical source and that an "ALJ's lay opinion cannot properly fill this gap in proof." (*Id.*) She concludes that the lack of any treating or examining opinion on the record regarding her alleged mental limitations, coupled with the ALJ's failure to recognize or explain "conflicting" medical evidence, denotes a lack of substantial evidence supporting the mental RFC. (*Id.* at 16–17; Doc. 18 at 2–3.) The Court is not persuaded by Plaintiff's argument.

It is Plaintiff's burden in the first instance to prove that she is disabled. *Stone v. Heckler*, 722 F.2d 464, 468 (9th Cir. 1983). The ALJ has a duty to fully develop the record, *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983), but such duty is limited. In *Tonapetyan v. Halter*, 242 F.3d 1144 (9th Cir. 2001), the Ninth Circuit Court of Appeals summarized an ALJ's duty to fully

and fairly develop the record:

> The ALJ in a social security case has an independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered. This duty extends to the represented as well as to the unrepresented claimant . . . . The ALJ's duty to develop the record fully is also heightened where the claimant may be mentally ill and thus unable to protect her own interests. Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to conduct an appropriate inquiry. The ALJ may discharge this duty in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record.

*Id*. at 1150 (citations and quotation marks omitted). However, the agency's regulations also provide: "If you are applying for benefits and do not have a good reason for failing or refusing to take part in a consultative examination or test which we arrange for you to get information we need to determine your disability or blindness, we may find that you are not disabled or blind." 20 C.F.R. §§ 404.1518(a), 416.918(a); *see also, e.g., McCann v. Astrue*, No. EDCV 09–01432 SS, 2010 WL 2803964, at *4 (C.D. Cal. July 15, 2010) ("Social Security regulations state that if a claimant does not have a 'good reason' for failing or refusing to take part in consultative examinations or tests arranged by the ALJ, then the ALJ may make a negative disability determination based solely on their failure to appear.")

Here, the Commissioner did not fail to develop the record. The record confirms that Plaintiff was referred for a consultative examination that would have potentially developed the record with respect to Plaintiff's mental impairments, but Plaintiff failed to appear for that exam. (AR 100, 405–06.) Plaintiff also failed to respond to the agency scheduling an earlier consultative examination in January 2014, and she did not respond to the agency's letters or phone calls requesting she contact the agency's office to reschedule the examination. (AR 100.) Neither Plaintiff nor her attorney have established, or even attempted to argue, that she had "good cause" for missing the scheduled examination.

Although the ALJ could have dismissed Plaintiff's claim on this ground alone, *see* 20 C.F.R. §§ 404.1518(a), 416.918(a), he did not do so. Instead, at hearing, the ALJ agreed to keep the record open for three weeks to obtain additional evidence, at Plaintiff's counsel's request. (AR

37, 68–69.) No additional records were submitted.[6] Thus, to the extent that the record was not fully developed with respect to Plaintiff's mental limitations, Plaintiff is to blame. *See, e.g., Alcazar v. Astrue,* No. CV 12-4494 AGR, 2013 WL 645622, at *3 n.2 (C.D. Cal. Feb. 21, 2013) ("The ALJ kept the record open for Alcazar to submit additional treatment records. The ALJ thereby satisfied his duty to develop the record.") (internal citations omitted); *Bailey v. Astrue*, No. 2:08–cv–02410 KJN, 2010 WL 3393868, at *9 (E.D. Cal. Aug. 26, 2010) (finding no failure to develop record where the plaintiff failed to attend consultative examinations); *McCann*, 2010 WL 2803964, at *4 (same).

Plaintiff's failure to assist in the development of the administrative record left the ALJ to make a finding based on the record before him. Contrary to Plaintiff's assertion, the ALJ's assessment of Plaintiff's mental RFC is consistent with this record. As the ALJ noted, Plaintiff's treatment notes show that in December 2011 she had normal mood and affect, good insight and judgment, and denied suicidal ideation, homicidal ideation, auditory hallucinations, and delusional thoughts. (AR 23, 338, 344, 350, 352.) Plaintiff "emphatically denied" all suicidal and homicidal ideation in February 2013. (AR 24, 259.) The ALJ observed that in May 2013, NP Salazar conducted a psychiatric evaluation and noted Plaintiff was well-groomed and engaged appropriately. (AR 24, 251–52, 401–402.) Treater NP Salazar found Plaintiff had normal motor activity, cognition, speech, affective range, and orientation; organized and linear thought processes; and fair insight. (AR 24, 251–52, 401–402.) As the ALJ pointed out, Plaintiff thereafter presented to NP Salazar with cooperative behavior and normal motor activity, sensorium, speech, orientation, affective range, and thought processes. (AR 24, 246, 396 (July 2013 treatment note); AR 393 (October 2013 treatment note.) Treating physician Dr. Balog noted in December 2015 Plaintiff was well-groomed and cooperative, with normal motor activity, sensorium, cognition, speech, orientation, and affective range. (AR 408.) Her thought processes were linear and goal-oriented. (AR 408.) These consistently normal findings with respect to Plaintiff's behavior, speech, thought processes, affect, cognition, and orientation were substantial evidence to assess an RFC finding

---

[6] Plaintiff also failed to submit additional evidence to the Appeals Council, despite having requested an additional 30-day extension to do so. (*See* AR 174.)

Plaintiff capable of performing routine repetitive work tasks, including adapting to and managing herself in such an employment setting, with occasional face-to-face interaction with the general public, supervisors, and coworkers.[7]

Plaintiff contends that the ALJ "failed to address conflicting evidence in the record when assessing [her] mental RFC," citing two examples (Doc. 14 at 15), but the ALJ's decision belies Plaintiff's position. The ALJ <u>did</u> note that Plaintiff reported "some hallucinations" and "a depressed mood" to NP Salazar during her May 2013 examination. (AR 24.) He also noted, contrary to Plaintiff's assertion, that Plaintiff thereafter "continued to exhibit irritable mood with some report of hallucinations" and presented to Dr. Balog in December 2015 with "impaired" insight and judgment. (AR 24.) Plaintiff further cites to portions of treatment notes with findings that allegedly undermined the ALJ's mental RFC assessment (*see* Doc. 14 at 16–17), but these excerpts appear to be "cherry picked" to support Plaintiff's conclusion and do not account for the treatment notes as a whole. For example, Plaintiff fails to acknowledge that the same treatment notes that contain reports of fighting and being fired due to "co worker and supervisor issues" also contain objective medical findings of cooperative behavior, normal affective range, organized thought processes, and calm mood. (*See* AR 246, 259, 393.) The same treatment notes that show Plaintiff had "poor to fair insight," also show she had normal cognition, speech, orientation, sensorium, affective range, and thought processes. (*See* AR 411 412, 414, 416.) The ALJ may rely on specific and concrete conclusions regarding a plaintiff's limitations but need not rely on equivocal statements or recommendations when formulating an appropriate RFC. *See Rounds v. Comm'r Soc. Sec. Admin*., 795 F.3d 1177, 1185-86 (9th Cir. 2015) (citing *Carmickle v. Comm'r Soc. Sec. Admin*., 533 F.3d 1155, 1165 (9th Cir. 2008)). Additionally, the ALJ is the "final arbiter" regarding the resolution of ambiguities in the medical evidence. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (citing Andrews, 53 F.3d at 1039–40 ("The ALJ is responsible for

[7] The ALJ's RFC assessment is also based on consideration of Plaintiff's statements concerning the "intensity, persistence and limiting effects of [her] symptoms," which the ALJ discussed. (AR 25.) The ALJ found these statements were "not entirely consistent with the medical evidence and other evidence in the record . . . ." (AR 25.) Plaintiff does not challenge the sufficiency of the evidence supporting the ALJ's adverse credibility finding or the adequacy of the ALJ's reasons given to explain this finding. The Court therefore considers the ALJ's unchallenged credibility finding to be binding. *See, e.g., Stanley v. Astrue*, No. 1:09–cv–1743 SKO, 2010 WL 4942818, at *6 (E.D. Cal. Nov. 30, 2010)

determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities."). Plaintiff's argument is little more than an alternative interpretation of the evidence, and this Court will not second guess the ALJ's reasonable interpretation, even if such evidence could give rise to inferences more favorable to Plaintiff.[8] *See Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).

In sum, substantial evidence supports the ALJ's conclusions regarding the impact of Plaintiff's mental impairments on the RFC. Plaintiff may disagree with the RFC, but the Court must nevertheless uphold the ALJ's determination because it is a rational interpretation of the evidence. *See Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff also contends the ALJ improperly substituted his own lay opinion as that of a medical source or otherwise improperly imposed his own lay interpretation of the medical evidence. (*See* Doc. 14 at 14; Doc. 18 at 4–5.) This argument is unavailing. The nature of the ALJ's responsibility is to interpret the evidence of record, including medical evidence. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Such a responsibility does not result in the ALJ committing legal error when he assesses an RFC that is consistent with the record. *See Mills v. Comm'r of Soc. Sec.*, No. 2:13-CV-0899-KJN, 2014 WL 4195012, at *4 (E.D. Cal. Aug. 22, 2014) ("[I]t is the ALJ's responsibility to formulate an RFC that is based on the record as a whole, and thus the RFC need not exactly match the opinion or findings of any particular medical source.") (citing *Magallanes v. Bowen*, 881 F.2d 747, 753 (9th Cir. 1989)).

Here, before he assessed Plaintiff's mental RFC, the ALJ met his duties by examining the evidence of Plaintiff's mental impairments, as set forth above. This was not the result of an ALJ improperly imposing lay opinion regarding medical evidence; it was the result of an ALJ properly interpreting evidence of record, as he is charged to do. Nor was the ALJ's mental RFC assessment an expression of an improper medical opinion. Rather, it was an expression of findings and conclusions mandated by the disability determination process. *See, e.g., Mills,* 2014 WL 4195012, at *4 (finding argument that the ALJ was improperly attempting to "play doctor" lacked merit

---

[8] Moreover, it is unclear what functional limitations Plaintiff believes these treatment notes establish that were not accounted for in the ALJ's RFC assessment. Plaintiff asserts that evidence of her irritable mood and anger "conflicts with a finding that Ms. Marshall [sic] 'can manage herself in an employment setting for routine repetitive work'" (Doc. 18 at 4), but she seems to overlook the fact that the RFC incorporates a limitation of occasional, *i.e.*, one-third of the workday, face-to-face interaction with the general public, supervisors, and coworkers. (*See* AR 22.)

where the ALJ "carefully analyzed the various medical opinions, treatment records, and plaintiff's own testimony in formulating an RFC."). Plaintiff has not shown the ALJ erred in assessing her RFC.

**B.      The ALJ's Application of the Grids**

Finally, Plaintiff contends that the ALJ erred at step five by relying exclusively on the Medical-Vocational Guidelines, 20 CFR, Part 404, Subpart P, Appendix 2 ("Grids"), without either articulating why Plaintiff's non-exertional limitations did not impact the job base under the Grids, or calling a vocational expert ("VE") to offer an opinion as to whether there were jobs existing in significant numbers in the national economy that Plaintiff can perform despite her limitations. (Doc. 14 at 17–19; Doc. 18 at 5–9.)

Defendant asserts that the ALJ properly relied on the Grids at step five and a VE's testimony was unnecessary, in view of Plaintiff's non-exertional limitations that did not significantly reduce the occupational base for unskilled work. (Doc. 17 at 20.)

**1.      Legal Standard**

The Grids provide a uniform conclusion about disability for various combinations of age, education, previous work experience, and residual functional capacity. The Grids allow the Commissioner to streamline the administrative process and encourage uniform treatment of claims based on the number of jobs in the national economy for any given category of residual functioning capacity. *See Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983) (discussing creation and purpose of the Grids).

The Commissioner may apply the Grids in lieu of taking the testimony of a vocational expert only when the Grids accurately and completely describe the claimant's abilities and limitations. *See Jones v. Heckler*, 760 F.2d 993, 998 (9th Cir. 1985). Thus, the Commissioner generally may not rely on the Grids if a claimant suffers from non-exertional limitations because the Grids are based on exertional strength factors only. *See* 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(e). "The use of the grids to find a claimant not disabled can be appropriate when both exertional and nonexertional limitations are alleged," but only where ALJ finds that the plaintiff's "nonexertional limitations do not significantly affect [her] exertional capabilities." *Bates v.*

*Sullivan*, 894 F.2d 1059, 1063 (9th Cir. 1990), *overruled in part by Bunnell v. Sullivan*, 947 F.2d 341 (9th Cir. 1991). "If a claimant has an impairment that limits his or her ability to work without directly affecting his or her strength, the claimant is said to have non-exertional . . . limitations that are not covered by the Grids." *Penny v. Sullivan*, 2 F.3d 953, 958 (9th Cir. 1993) (citing 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(d), (e)).

In cases where the Grids are not fully applicable, the ALJ may meet his burden under step five of the sequential analysis by propounding to a vocational expert hypothetical questions based on medical assumptions, supported by substantial evidence, that reflect all the plaintiff's limitations. *See Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995). Specifically, where the Grids are inapplicable because plaintiff has sufficient non-exertional limitations, the ALJ is required to obtain vocational expert testimony. *See Burkhart v. Bowen*, 856 F.2d 1335, 1341 (9th Cir. 1988).

### 2. Analysis

In formulating Plaintiff's RFC, the ALJ determined that Plaintiff is limited to "occasional face-to-face interaction with the general public, supervisors, and coworkers with occasional defined as one-third of the workday with each group." (AR 22.) At step five, the ALJ found that Plaintiff's non-exertional limitations "have little effect on the occupational base of medium work." (AR 26.)

Citing Social Security Ruling ("SSR") 85-15, as "reinforced by" SSR 96-9p, the ALJ noted that

> the basic mental demands of competitive, remunerative work include the abilities on a sustained basis to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting.

(AR 26.)

In applying SSR 85-15, the ALJ explained that because Plaintiff "has the ability to understand, carry out, and remember simple instructions" and "can also respond to supervision and coworkers without problem and deal with changes in [a] routine work setting," she "is capable of meeting the mental demands of unskilled work." (AR 26.) As a result, the ALJ found that reliance on the Grids was appropriate, which directed a finding of "not disabled" under Grid rule 203.25. (AR 26.)

18

Here, the ALJ's reliance on the Grids for a non-disability determination in light of Plaintiff's non-exertional limitations was improper. There is no dispute that the ALJ found sufficient evidence to support Plaintiff's non-exertional limitations with respect to Plaintiff's ability to interact with coworkers, supervisors, and the public, as the ALJ incorporated those limitations into Plaintiff's RFC. The issue here is whether such limitations significantly erode the unskilled occupational base of medium work, and thereby necessitate testimony by a VE.

In addressing this issue, Defendant asserts that the ALJ's sole reliance on the Grids is proper because the ALJ limited Plaintiff to unskilled work, which the agency defines as "simple work and primarily involves work with objects and not people." (Doc. 17 at 20). This argument is unavailing because it does not address all of the non-exertional limitations found by the ALJ. While a limitation to "occasional contact with the general public" has been found to be consistent with the nature of unskilled work such that the limitation does not erode the occupational base, *see, e.g., Lester v. Astrue*, No. 09-01730, 2011 U.S. Dist. LEXIS 31874, 2011 WL 902344 (E.D. Cal. March 14, 2011), the effect of Plaintiff's non-exertional limitations involving contact with *coworkers* and *supervisors* is a different matter. A number of courts, including this court, have held that where an ALJ specifically limits a claimant's ability to interact with coworkers and supervisors, such a limitation conflicts with the basic requirements of unskilled work and has the potential to significantly erode the occupational base. *See e.g., Terrill v. Berryhill*, Case No. 1:17-cv-00751-BAM, 2018 WL 4503429, at *4 (E.D. Cal. Sept. 19, 2018) (collecting cases). Indeed, as noted by the ALJ (AR 26) , SSR 85-15 provides that one of the requirements of unskilled work is the ability "to respond appropriately to supervision [and] coworkers . . . ." *See* Titles II & Xvi: Capability to Do Other Work–The medical-Vocational Rules As A Framework for Evaluating Solely Nonexertional Impairments, SSR 85-15 (S.S.A. 1985), 1985 WL 56857 at *4. The ruling further states that "[a] substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base." *Id*.

Despite Defendant's attempt to distinguish it (*see* Doc. 17 at 21), this court's decision in *Terrill* is instructive. In that case, the court found the ALJ erred in failing to call a VE to testify despite the ALJ's finding that a limitation to "no more than occasional face-to-face interaction with

each the general public, coworkers, and supervisors" would not significantly erode the occupational base. *See Terrill,* 2018 WL 4503429, at *4. That same non-exertional limitation was found in this case. (*See* AR 22.) Like the ALJ in *Terrill*, the ALJ in this case has failed to demonstrate how a limitation to occasional face-to-face interaction with the general public, coworkers, and supervisors would not significantly erode the unskilled occupational base of unskilled medium work. Instead, the ALJ made a finding that Plaintiff "can [] respond to supervision and coworkers without a problem" (AR 26) without any evidentiary support from the record and, more importantly, without explaining how this finding can be reconciled with Plaintiff's limited ability to interact with coworkers and supervisors, as incorporated in her RFC (AR 22).

In view of SSR 85-15 and *Terrill* (and the case authority cited therein), the Court concludes that the Grids do not provide an adequate basis for the ALJ to conclude that Plaintiff is not disabled. Although the ALJ stated that Plaintiff's mental limitations "have little effect on the occupational base of unskilled medium work," the Court cannot accept the ALJ's decision given his lack of analysis at step five, coupled with the weight of authority finding that a limitation on a claimant's ability to interact with either supervisors or coworkers precludes the ALJ from relying on the Grids. As a result, the case will be remanded so that the ALJ can address these limitations and take the testimony of a VE. *See Terrill,* 2018 WL 4503429, at *4.

**C.     Remand for Further Proceedings is Appropriate**

The decision whether to remand for further proceedings or order an immediate award of benefits is within the Court's discretion. *See Harman v. Apfel*, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 593-96 (9th Cir. 2004).

The Court concludes that remand for further administrative proceedings is appropriate. *Cf. Terrill*, 2018 WL 4503429, at *4 (remanding for further administrative proceedings). Here, as Plaintiff concedes (*see* Doc. 14 at 19), there are outstanding issues that must be resolved before a final determination can be made. Specifically, the ALJ's reliance on the Grids was improper and

therefore the ALJ was required to consult a VE.  On remand, the ALJ must take the testimony of a VE to determine whether there are jobs in the national economy that Plaintiff is able to perform despite her mental limitations as set forth in the RFC.

## V.        CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is, therefore, VACATED and the case REMANDED to the ALJ for further proceedings consistent with this Order.  The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Jennifer Adriana Mendoza and against Defendant Andrew Saul, Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   **September 2, 2019**                              /s/ *Sheila K. Oberto*
                                                    UNITED STATES MAGISTRATE JUDGE